IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN MEYERS, | : | |
|        Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RAYMOND M. LAWLER, | : | No. 09 - 0346 |
| *SUPERINTENDENT*, | : | |
|        Respondent. | | |

NORMA L. SHAPIRO, J.                                                                  August 26, 2010

## **M E M O R A N D U M**

Brian Meyers ("Meyers"), an inmate at the State Correctional Institute at Huntingdon, Pennsylvania, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The Honorable L. Felipe Restrepo, United States Magistrate Judge for the Eastern District of Pennsylvania, filed a Report and Recommendation ("R&R") recommending the petition be dismissed. Meyers timely filed an objection to the R&R claiming that he should be allowed an evidentiary hearing to establish cause for equitable tolling, because he is actually innocent from the crimes for which he was convicted. The R&R will be adopted. Meyers's writ of habeas corpus will be dismissed; no Certificate of Appealability shall issue.

## **I. BACKGROUND**

"This horrifying and despicable crime involves the vicious rape, beating and torture of Shirley Dunbar, by three defendants in an outdoor weeded lot in Philadelphia during the early morning hours of September 5, 1990." *Commonwealth v. Meyers*, No. 4737-47 Oct. Term 1990, 1-2 (C.P. Phila. Jan. 28, 1992). Ms. Dunbar knew Meyers from the neighborhood. She spoke with Meyers prior to the attack and had many opportunities to view the assailants during their

brutal assault. When she regained consciousness at the hospital, she immediately spoke with the police and named Meyers as one of her assailants. Ms. Dunbar also identified Meyers at trial.

Ms. Dunbar's identification of Meyers was corroborated by Erica Johnson, a disinterested neighborhood bystander. At trial, Ms. Johnson testified that after Ms. Dunbar rejected Meyers's sexual advances, Meyers told Ms. Dunbar that "I know you, you are Curtis Dunbar's sister." Ms. Johnson testified that she saw Meyers walk with the victim down the street towards the crime scene.

Meyers's co-workers from a fishing boat in Cape May, testified that Meyers left the fishing boat for Philadelphia eleven days prior to the crime. Meyers's father, Robert Meyers, testified that since he locked Meyers in their house that day, Meyers could not have committed the crime.

On March 21, 1991, in the Court of Common Pleas of Philadelphia, a jury found Meyers guilty of rape, involuntary deviate sexual intercourse, aggravated incident assault, and criminal conspiracy. Meyers was sentenced to a consecutive sentence of not less than 10 years nor more than 20 years for rape and involuntary deviate sexual intercourse, and not less than 5 years nor more than 10 years for conspiracy. The Superior Court of Pennsylvania affirmed the trial court on October 8, 1992, and the Supreme Court of Pennsylvania denied allowance of appeal on October 18, 1993. Meyers did not seek review in the United States Supreme Court.

Meyers timely filed his first petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541 *et seq.*, on January 5, 1994. On November 28, 1997, the PCRA court denied the petition concluding his claims were meritless, i.e., Meyers had effective trial counsel and his identification was not at issue in the trial. Meyers appealed to the Superior Court

of Pennsylvania on December 23, 1997. The Superior Court of Pennsylvania dismissed the appeal without prejudice on October 27, 1998 because Meyers failed to file an appellate brief.

On February 22, 1999, Meyers filed a timely second PCRA petition seeking a reinstatement of his right to file an appeal (a *"nunc pro tunc* appeal"*)* from the dismissal of his first PCRA petition. The PCRA court granted the request and ordered appointment of new counsel for Meyers. Counsel then filed an appeal seeking relief from dismissal of the first PCRA petition. However, the Superior Court of Pennsylvania dismissed the appeal without prejudice on October 25, 1999 because Meyers failed to file an appellate brief.

On February 10, 2000, Meyers filed a third timely PCRA petition requesting a *nunc pro tunc* appeal of the dismissal of his first PCRA petition. On March 20, 2000, the PCRA court granted the request and ordered appointment of new counsel, but an appeal was not filed.

On August 23, 2001, Meyers filed a fourth PCRA petition and an amended fourth PCRA petition on January 7, 2002. In the amended petition, Meyers again requested a *nunc pro tunc* appeal of the dismissal of his first PCRA petition. The PCRA court granted the request for relief on April 1, 2002. On appeal to the Superior Court of Pennsylvania, Meyers's attorney sought to withdraw because after examination of the record, and an interview with Meyers, counsel determined the appeal was frivolous. On October 29, 2003, the Superior Court of Pennsylvania permitted counsel to withdraw and held the PCRA court did not have jurisdiction to consider the fourth PCRA petition because it was untimely. The Superior Court of Pennsylvania also found meritless Meyers's underlying dispute, that he was not properly identified as one of the assailants. The court noted that Meyers was seen talking to Ms. Dunbar before the assault and she was able to identify him upon regaining consciousness.

On October 14, 2004, Meyers filed a motion for DNA testing of several items of evidence used in his trial, pursuant to 42 Pa.C.S § 9543.1 (post-conviction DNA testing statute).[1] The Philadelphia Court of Common Pleas granted the motion allowing DNA testing of the evidence assuming the items were still in existence. The District Attorney's office failed to advise the common pleas court whether the evidence still existed. Meyers's counsel failed to enforce the order and on July 1, 2005 the case was closed.

Thereafter, Meyers obtained new counsel who contacted the District Attorney's office to enforce the DNA testing order. On June 22, 2005, the District Attorney's office responded to

---

[1] Section 9543.1 provides, in pertinent part:

(a) Motion. -
    (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
    (2) The evidence may have been discovered either prior to or after the appellant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the appellant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency....
(c) Requirements.- In any motion under subsection (a), under penalty of perjury, the applicant shall:
    (2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and
    (3) present a prima facie case demonstrating that the:
        (i) identify of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and
        (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
            (A) the applicant's actual innocence of the offense for which the applicant was convicted.

42 Pa.C.S. § 9543.1.

counsel that pursuant to court order, the Philadelphia Police Department Evidence Custodian destroyed all the items Meyers sought to examine on September 15, 1995.[2]

On August 18, 2006, Meyers filed a fifth PCRA petition alleging the District Attorney's response was "new evidence" of prosecutorial misconduct based on the Commonwealth disposing of potentially exculpatory evidence when his appeals were pending. Meyers also alleged he was innocent of the crimes for which he was convicted because he was working in Cape May when the crime occurred. On September 10, 2007, the PCRA court dismissed the petition as untimely. On October 2, 2008, the Superior Court of Pennsylvania affirmed the PCRA court's finding that Meyers's petition was untimely and it lacked jurisdiction to grant the relief requested.

## II. MEYERS'S HABEAS CORPUS PETITION

Meyers filed the instant habeas corpus petition on January 21, 2009.[3] Meyers claims that the state courts violated his Fourteenth Amendment, common law, and statutory rights by denying him relief on his claim that the Commonwealth of Pennsylvania intentionally destroyed potentially exculpatory evidence. The Commonwealth argues that Meyers's claim is time barred.

The Magistrate Judge filed an R&R recommending that: (1) Meyers's claim is not cognizable in a writ of habeas corpus petition under 28 U.S.C. § 2254; and (2) if it were

---

[2] The order was issued by the Supervising Judge of the Philadelphia Court of Common Pleas on September 15, 1995. The order approved a petition by the District Attorney to destroy 1,869 items of property seized and held in connection with non-conviction dispositions. Since Meyers had been convicted, the order was not intended to authorize destruction of evidence from Meyers's trial. *But see Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, — U.S. —, —, 129 S.Ct. 2308, 2322 (2009) (a state prisoner has no substantive due process right of access to the State's DNA evidence).

[3] The Clerk of the Court docketed Meyers's petition on January 23, 2009. Meyers is a *pro se* inmate; his petition is deemed filed on the date he gave it to prison officials for mailing. *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Meyers signed the petition on January 21, 2009. Absent any evidence to the contrary, the court deems this earlier date the filing date.

cognizable, the petition is untimely. The Magistrate Judge recommended dismissal of Meyers's petition with no Certificate of Appealability.

Meyers admits in his Objections to the Report and Recommendation that "the R&R in toto, appears to be correct in its determination, in relation to the Petitioner's Habeas." *See* Petr.'s Obj. 2. Meyers's sole objection is that there has not been an evidentiary hearing to allow him to establish facts demonstrating equitable tolling is warranted because he is actually innocent of the crimes for which he was convicted. Meyers's actual innocence claim is based on his alibi that he was working on a fishing boat in Cape May at the time of the crime. Meyers did not provide the court with any evidence to substantiate this alibi. We consider *de novo* those portions of a magistrate judge's report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C).

### III. DISCUSSION

A. Legal Standard

A district court has jurisdiction to provide habeas corpus relief to a state inmate only when there has been a violation of the Constitution, laws or treaty of the United States. 28 U.S.C. § 2254(a). Section 2254 provides in relevant part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Federal courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923).

B. Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), imposes a one-year statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d)(1). The time period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, the one-year statute of limitations under AEDPA is tolled during the time the petitioner had a timely filed PCRA petition pending in the Pennsylvania courts. *Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000).

Meyers's Objections to the R&R suggest this court should use 28 U.S.C. § 2244(d)(1)(D) to calculate the start of the AEDPA statute of limitations; this would be inappropriate. Since Meyers was aware of the evidence he now seeks to test during his trial, the court must use section 2244(d)(1)(A), the date on which Meyers's judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

Meyers's direct review concluded on January 17, 1994, upon expiration of the ninety-day period for seeking a writ of certiorari from the United States Supreme Court. Since Meyers was convicted prior to AEDPA's enactment on April 24, 1996, the statute of limitations began to run one year later on April 24, 1997. During that interim period, Meyers's first PCRA petition was dismissed without prejudice because he failed to file an appellate brief. The AEDPA statute of limitations was tolled until the conclusion of the state court's review on October 27, 1998.

Meyers filed his second PCRA petition on February 22, 1999, 118 days later. The second petition was dismissed without prejudice on October 25, 1999. Meyers filed his third PCRA petition on February 10, 2000, 108 days later. On March 20, 2000, the PCRA court granted the request but an appeal was not filed. Meyers filed a fourth PCRA petition on August 23, 2001, 521 days later. On October 29, 2003, the Superior Court of Pennsylvania held the fourth PCRA petition untimely.

When Meyers's second and third PCRA petitions were not pending (118 days and 108 days respectively), the AEDPA statute of limitations was not tolled. When the dismissal of his third PRCA petition was final on March 20, 2000, Meyers had 139 days left to file a timely habeas corpus petition. Because the 139th day fell on a Sunday, Meyers had until the following day, Monday August 7, 2000, to file a timely habeas corpus petition. Meyers's fourth PCRA petition did not toll the AEDPA statute of limitations as it was filed after the statute of

8

limitations had run and thus was not "properly filed." Meyers filed the instant habeas corpus petition on January 21, 2009, more than eight years later. Meyers's habeas corpus petition must be dismissed as untimely, unless equitable tolling applies.

### C. Equitable Tolling

Meyers's objection to the R&R is that equitable tolling should apply so he can establish in an evidentiary hearing that he is actually innocent because he was working at a fishing boat in Cape May when the crime occurred.

Equitable tolling of AEDPA's statute of limitations applies only in rare or extraordinary circumstances. *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 617-18 (3d Cir. 1998). "[E]quitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair . . . [m]ere excusable neglect is not sufficient." *Miller*, 145 F.3d at 618-619 (citations and quotations omitted). The requirements for equitable tolling are: (1) the existence of extraordinary circumstances which have prevented petitioner from asserting his rights, and (2) petitioner's reasonable diligence in investigating and bringing his claims. *Id.* Petitioner bears the burden of proving both requirements. *Urcinoli v. Cathel,* 546 F.3d 269, 273 (3d Cir. 2008).

Meyers failed to pursue his claim of actual innocence with diligence. His claim is based on the speculative possibility that DNA testing of evidence, now unavailable, might have revealed potentially exculpatory evidence. DNA evidence testing became widely available to Pennsylvania inmates upon enactment of the Post-Conviction DNA Testing statute on January 1, 1995. Meyers first requested DNA testing of the evidence on September 20, 2004. Having waited years to assert his rights, Meyers fails to present evidence that anything extraordinary prevented him from filing an earlier claim.

Even if DNA testing of the evidence was possible, it would not lead to Meyers's exoneration. The state courts that have reviewed the record have concluded that the identification of Meyers as one of the assailants was not an issue at trial, and the evidence presented and Ms. Dunbar's consistent identification of Meyers, substantiated the guilty verdict. The Superior Court of Pennsylvania, held that:

> [W]e are hard pressed to find that [Meyers] acted in due diligence in ascertaining that possible exculpatory evidence had been destroyed. Finally, [Meyers] failed to establish that, even if the result of the DNA analysis revealed that the blood on the sneaker was other than the victim's, a different verdict would likely had occurred. [Meyers] would not be able to demonstrate that favorable results of the requested DNA testing would establish his actual innocence of the crimes for which he is convicted.

*Commonwealth v. Meyers*, No. 2313 EDA 2007, 12-13 (Pa. Super. Oct. 2, 2008). In DNA, as in other areas, an absence of evidence is not evidence of absence. *Commonwealth v. Heilman*, 867 A2d 542, 547 (Pa. Super. 2005). Meyers is not entitled to equitable tolling of the one-year statute of limitations because he has failed to show that extraordinary circumstances kept him from pursuing his claim, or that he has pursued it with diligence.

D. Meyers's Actual Innocence Claim

To establish actual innocence, a petitioner must show that, in light of all of the evidence in the case, "it is more likely than not that no reasonable juror would have convicted him." *United States v. Davies*, 394 F.3d 182, 191 (3d Cir. 2005). The evidence must be new and reliable, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that would make it more likely than not that no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Court of Appeals has not yet decided whether a claim of actual

innocence in a habeas corpus petition may equitably toll the one-year AEDPA statute of limitations. *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 84 n. 5 (3d Cir. 2007).

Assuming an actual innocence claim provides a basis for equitable tolling, the court cannot award equitable tolling because Meyers's innocence claim, based on potentially exculpatory DNA evidence, fails to satisfy the exacting standard of actual innocence. *Davies*, 394 F.3d at 191. The DNA evidence Meyers seeks to test is not new, as it was available at the time of trial. The same evidence is neither reliable nor relevant to his innocence or guilt. Even if the DNA test produced exculpatory results, Meyer cannot establish that a different verdict would have likely occurred. Finally, Meyers's assertion that he was working in a fishing boat in Cape May was already held meritless by the Superior Court of Pennsylvania on dismissal of his fifth PCRA petition. In fact, the fishing boat alibi is contradictory to trial testimony; his co-workers testified that he left the fishing boat for Philadelphia eleven days prior to the crime, and his father testified that he locked Meyers in the house the day of the crime. Meyers has failed to show it is more likely than not that no reasonable juror would have convicted him. Meyers actual innocence claim does not toll the AEDPA statute of limitations and his habeas corpus petition must be dismissed as untimely.

## IV. CONCLUSION

Meyers's objection to the Magistrate Judge's Report and Recommendation is overruled. The Report and Recommendation is adopted and the petition for writ of habeas corpus will be dismissed as untimely. Reasonable jurists would not debate the appropriateness of the court's procedural disposition of the claims; therefore, a Certificate of Appealability should not issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.